UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANTHONY YOUNG,

                       Petitioner,

- against -

WILLIAM PHILLIPS, Superintendent, GREEN
HAVEN Correctional Facility

                       Respondent.
----------------------------------------------------------------x

OPINION & ORDER

No. 05-cv-04466 (NG)(JMA)

On June 19, 2000, following a jury trial in the Supreme Court of the State of New York, Kings County (Chambers, J.), petitioner Anthony Young was convicted of murder in the second degree (N.Y.P.L. § 125.25(2)), for which he was sentenced to an indeterminate term of imprisonment of twenty-five years to life. Proceeding *pro se*, Young petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Construing his habeas petition broadly, Young contends that his conviction should be vacated because: (i) the trial court erred in denying his request for a missing witness charge; (ii) the prosecution failed to provide Young with copies of his post-arrest statements in advance of trial; (iii) the prosecution did not offer those statements as evidence at trial; (iv) the trial court failed to rule on the scope of Young's testimony concerning the contents of his post-arrest statements; and (v) he received ineffective assistance of trial and appellate counsel.

For the reasons stated below, the court finds that Young has not demonstrated any basis for habeas relief and therefore denies the petition in its entirety.

I.      **BACKGROUND**

Richard Hoyte ("Hoyte") was killed on the evening of May 9, 1999, in Prospect Lefferts Garden, Brooklyn as he walked on Parkside Avenue. Petitioner Young admittedly stabbed

Hoyte in the neck, severing his jugular vein and carotid artery, and fracturing his cervical vertebrae. Young was charged with two counts of murder in the second degree, intentional murder and depraved indifference murder (N.Y.P.L. §§ 125.25(1), (2)), and one count of criminal possession of a weapon in the fourth degree (N.Y.P.L. § 265.01) for the killing of Hoyte. Following a jury trial, Young was found guilty of depraved indifference murder (N.Y.P.L. § 125.25(2)) and sentenced to an indeterminate prison term of twenty-five years to life.

A. TRIAL

Young's trial commenced before Justice Cheryl E. Chambers in the Supreme Court of the State of New York, Kings County, on June 7, 2000.[1] It was undisputed at trial that Young stabbed Hoyte in the neck—a fact that Young's counsel submitted in his opening statement and that Young confirmed in his testimony at trial. (Tr. 17; 338.)[2] The principal issues at trial were whether, in killing Hoyte, Young committed murder or manslaughter, or whether his conduct was justified.

As established at trial, Young and Hoyte knew each other through Dawn Branch ("Branch"). Branch had previously dated Hoyte while married to Young, whom she was in the midst of divorcing at the time of trial. At the time of his death, Hoyte was no longer dating Branch, but was engaged to Shevaughn Rosa ("Rosa"). Rosa testified at trial that, on the evening of May 9, 1999, she and Hoyte were walking on Parkside Avenue in Brooklyn toward Prospect Park when she noticed Branch, whom she recognized as Hoyte's ex-girlfriend, having a conversation with Young. (Tr. 227-28.) Rosa told the jury that, as she and Hoyte walked past

---

[1] Young's first trial, which was also before Justice Chambers, was conducted in early 2000 and ended in a mistrial on February 3, 2000, after the jury was unable to reach a verdict.

[2] Tr. refers to the transcript of Young's trial beginning on June 7, 2000.

2

Branch and Young, she observed Branch whisper something to Young, who then made his hands into fists and began walking swiftly toward her and Hoyte. (Tr. 229-30.) Rosa explained that, as she warned Hoyte of Young's approaching presence, Hoyte turned in Young's direction just in time to receive a blow to his neck. (Tr. 233-35.) Rosa, with the help of others passing by, dragged Hoyte into a nearby barbershop where he ultimately succumbed to the three-inch stab wound in the right side of his neck. (Tr. 236-38; 318-21.)

While Young admitted to stabbing Hoyte, his counsel advanced the theory at trial that Young's conduct was justified in light of Hoyte's threatening behavior. In his testimony at trial, Young explained that he was on Parkside Avenue that evening when he ran into his estranged wife, Branch. (Tr. 336.) As he and Branch began to argue over their divorce proceedings, Young told the jury, Hoyte approached and confronted him, threatening Young to "get out of town." (Tr. 337.) Upon observing Hoyte reach into his waistband, Young testified, he himself pulled a knife out of his back pocket, stabbed Hoyte, and then immediately fled in the opposite direction on Parkside Avenue toward Flatbush Avenue. (Tr. 337-38.) Young also explained that Branch left the scene when the two men confronted each other, and before he stabbed Hoyte. (Tr. 355.)

Following his arrest two days later, Young made a written statement to the New York Police Department and recorded a video statement for the King's County District Attorney's Office. (Tr. 338.) In advance of trial, Young's counsel sought suppression of these post-arrest statements in a state court *Huntley* hearing.[3] While Young's request was denied following

---

[3] A hearing conducted pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), is used to determine the voluntariness of inculpatory statements given by a criminal defendant to law enforcement while in custody.

conclusion of the *Huntley* hearing, the prosecution nonetheless did not seek to submit those post-arrest statements into evidence at trial.

Following the close of evidence, Young's counsel made a request for a missing witness jury instruction as to Branch, whom the prosecution did not call as a witness.[4] The prosecution opposed Young's request, arguing that, not only was Branch not material because she did not observe Young stab Hoyte, but that she was also still married to Young at the time of trial and therefore not expected to testify on behalf of the prosecution. (Tr. 375.) The trial court denied the request for a missing witness charge on the basis that Young did not establish Branch was expected to testify favorably for the prosecution, and because of Young and Branch's marital status. (*Id.*)

On June 19, 2000, the trial court submitted to the jury two counts of murder in the second degree—intentional murder and depraved indifference murder—as well as first- and second-degree manslaughter as lesser included offenses. The court also charged the jury on justification. The jury acquitted Young of intentional murder, but convicted him of depraved indifference murder. On August 14, 2000, Young was sentenced to a prison term of twenty-five years to life in prison.

B. Procedural History

Young's conviction was affirmed by the Appellate Division, Second Department, on February 9, 2004, *People v. Young*, 4 A.D.3d 441 (2d Dep't, 2004), and leave to appeal to the New York Court of Appeals was denied on May 10, 2004, *People v. Young*, 2 N.Y.3d 809

---

[4] At Young's first trial, Branch was called as a witness, pursuant to a material witness order, by the defense. On cross-examination, Branch was asked about her previous statements to law enforcement in which she stated she was not at the scene on the day Hoyte was killed. At that trial, Branch testified that she was in fact at the scene, but that she only observed Young and Hoyte arguing, at which point she ran away. Branch was not asked about whether she whispered anything to Young that day. (*See* January 31, 2000 Trial Transcript, at 228-61.)

4

(2004). Young then filed his *pro se* petition for a writ of habeas corpus in this court on September 15, 2005, as amended on February 6, 2006. On February 21, 2006, Young requested permission to stay his habeas petition, indicating his intention to file an application for a writ of error coram nobis in state court. The late Hon. David G. Trager, to whom the case was then assigned, ordered Young's case administratively closed without prejudice on December 22, 2006, pending exhaustion of Young's state court proceedings. Following denial in state court of Young's *pro se* petition seeking a writ of error coram nobis and his two *pro se* motions to vacate the judgment, Young informed this court on February 2, 2012, that he had fully exhausted his state court remedies and requested reopening of his habeas petition. The court set a briefing schedule, and the petition was fully briefed on April 14, 2014. It is uncontested that Young exhausted his state court remedies as to each of his claims.

## II. STANDARD OF REVIEW

As an initial matter, the court notes that Young is proceeding *pro se*, and accordingly his submissions are held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). His pleadings are all interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citations omitted). Notwithstanding, Young's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

To obtain habeas relief, a state prisoner must show that, pursuant to a state court judgment, he is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To prevail on a Section 2254 claim, a petitioner must

establish that the state court proceeding resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1),(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* In other words, the state court's application of federal law must be "so lacking in justification" that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S 86, 102-103 (2011) (internal quotation marks omitted).

With respect to factual determinations, a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (citations omitted). Instead, "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting § 2254(d)(2)). Upon such a challenge, petitioner bears the burden of

rebutting the state court's factual findings "by clear and convincing evidence." *Id.* (quoting § 2254(e)(1)).

## III. DISCUSSION

### A. MISSING WITNESS CHARGE

Young claims that habeas relief is appropriate because the jury was not instructed that it could draw an adverse inference from the prosecution's failure to call Branch as a witness at trial. Following the close of evidence, but prior to summations, counsel to Young requested a missing witness instruction as to Branch. (Tr. 374.) In support of the application, counsel submitted that Branch was an eyewitness to the crime and was available to the prosecution for testimony. Counsel also submitted that Branch possessed relevant personal history with Hoyte and Young that should have been made available to the jury. (*Id.*) The prosecution objected to the request on two grounds: (i) that based on her testimony at Young's first trial, Branch had left the scene before Hoyte was killed and therefore did not observe Young stab Hoyte; and (ii) that Branch was not expected to testify on behalf of the prosecution given her marital status with Young at the time. (Tr. 374-75.) The trial court denied the request for a missing witness charge, stating that, as Young's wife, Branch "would not be expected to testify for the prosecution," and noted that Branch's testimony at Young's first trial "was consistent with the fact that she had a relationship with [Young]." (Tr. 375.) On direct appeal, the Appellate Division agreed that the missing witness instruction was properly denied, finding that Young "failed to demonstrate that the uncalled witness would be expected to testify in the People's favor." *Young*, 4 A.D.3d at 441 (citing *People v. Kitching*, 78 N.Y.2d 532 (1991) and *People v. Gonzalez*, 68 N.Y.2d 424 (1986)).

(1) **Legal Standard**

The failure to provide a missing witness charge in accordance with New York law is a matter of state law for which habeas relief is ordinarily unavailable. *See e.g., Kirkby v. Filion*, 644 F.Supp.2d 299, 307 (W.D.N.Y. 2009). On habeas review, the court may consider only whether the trial court's failure to provide the missing witness instruction violated Young's federal constitutional rights. *See Cupp v. Naughton*, 414 U.S. 141, 146 (1973). "Like the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" *Kloskin v. Conway*, 501 F.Supp.2d 429, 444 (W.D.N.Y.2007) (quoting *Cupp*, 414 U.S. at 147).

"Whether a missing witness charge should be given lies in the sound discretion of the trial court." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir.1992) (citations omitted). Where "the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden... especially heavy.'" *Crews v. Herbert*, 586 F.Supp.2d 108, 114 (W.D.N.Y. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). While habeas relief may not be granted for a "'mere error of state law,' a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990).

(2) **Application**

Under New York law, to obtain a missing witness instruction, the party seeking the instruction must establish three preconditions. *People v. Savinon*, 100 N.Y.2d 192, 197 (2003);

8

*see also Gonzalez*, 68 N.Y.2d at 427. First, the uncalled witness must have knowledge material to the trial. *Savinon*, 100 N.Y.2d at 197. Second, the uncalled witness must naturally be expected to provide noncumulative testimony favorable to the party who has not called him. *Id.* This is often referred to as the "control" element, which "requires a court to evaluate the relationship between the witness and the party to whom he is expected to be faithful." *Id.* Third, the witness must be available to that party. *Id.*

Based upon the record, the trial judge properly denied Young's request for a missing witness charge because Young did not establish that Branch would "necessarily be expected to testify on behalf of the People." (Tr. 375.) While the trial court also noted the fact of Young and Branch's spousal relationship in evaluating the propriety of a missing witness charge, such an inquiry is relevant to whether Branch would be expected to testify favorably for Young, and the operative inquiry here is whether Young, in requesting a missing witness instruction, presented sufficient evidence to establish that Branch would be expected to testify favorably for the prosecution. *See e.g.*, *Gonzalez*, 68 N.Y.2d at 428 (party seeking the missing witness instruction bears initial burden of establishing that the uncalled witness "would be expected to testify favorably for the opposing party"). In affirming Young's conviction, the Appellate Division correctly noted that Young had failed to carry his burden. *Young*, 4 A.D.3d at 441.[5]

Even had the failure to give the jury a missing witness instruction violated New York law, there is no basis to conclude that such an error was of constitutional dimension. *See e.g.*, *Hernandez v. Lee*, 2014 WL 1407274, at *18 (E.D.N.Y. Apr. 11, 2014) (collecting cases). It is

---

[5] The court need not consider whether, in view of the difficulties in their spousal relationship, Branch would have been expected to testify favorably for Young; as the party requesting the missing witness instruction, Young was required to establish that Branch was under the "control" of the prosecution to warrant a missing witness instruction. *Cf. Savinon*, 100 N.Y.2d at 201 (affirming missing witness instruction in favor of the prosecution where the "closeness" of the relationship between the defendant and the missing witness, even though not current at the time of trial, was enough to substantiate the control element).

speculative to suggest that the trial court's failure to give a missing witness charge had any impact on the trial. Only on appeal did Young argue that, because Branch did not testify at trial as to what she whispered to Young, the jury was deprived of relevant evidence concerning Young's state of mind when he stabbed Hoyte. The defense's theory of the case at trial was that Young was justified in stabbing Hoyte in light of Hoyte's threatening behavior. (Tr. 337-38.) Indeed, notwithstanding Rosa's testimony that she observed Branch whisper something to Young, in his own testimony, Young omitted any mention of a whispering Branch when describing his own version of events on the day of Hoyte's murder. (Tr. 339-340.)

In sum, after careful review of the state court record, there is no basis for the court to conclude that the trial court's rejection of Young's missing witness charge request was erroneous under state law, much less that it violated Young's federal due process rights. The Appellate Division's affirmance, therefore, was not contrary to, nor an unreasonable application of, clearly established federal law.[6]

### B. POST-ARREST STATEMENTS

Young also seeks habeas relief on several grounds in connection with the fact that his post-arrest statements were not offered as evidence at trial. Specifically, and construing the application most favorably, Young submits that his constitutional rights were violated because: (i) the prosecution failed to provide Young with copies of his post-arrest statements in advance of trial; (ii) the prosecution did not offer those statements as evidence at trial; and (iii) the trial court failed to rule on the scope of Young's testimony concerning the contents of his post-arrest statements. As discussed below, each of Young's claims is without merit.

---

[6] To the extent Young raises a factual challenge to the trial court's ruling, the record supports the Appellate Division's conclusion that Young "failed to demonstrate that [Branch] would [have been] expected to testify in the People's favor." *Young*, 4 A.D.3d at 441.

First, the record belies Young's claim that he was not afforded access to his post-arrest statements by the prosecution in advance of trial. As the record reflects, the statements were produced to Young's trial counsel in advance of the *Huntley* hearing, at which the trial court determined Young's statements would not be suppressed.

With respect to Young's claim that he was deprived of a fair trial because the prosecution failed to offer his post-arrest statements into evidence, the simple answer is that the prosecution was under no obligation to do so. The prosecution exercised its discretion and chose not to offer Young's statements—which were deemed admissible at the *Huntley* hearing—into evidence at trial. Moreover, on his direct examination, Young told the jury that he made both oral and videotaped statements following his arrest and explained that those statements represented his "version of the events." (Tr. 339-40.) Consequently, Young cannot articulate any harm incurred as a result of the prosecution not moving such statements into evidence.

Young's claim of error because the trial court withheld ruling on the scope of Young's proposed testimony concerning his post-arrest statements also fails. Habeas relief would be appropriate only if Young could demonstrate that the failure to rule deprived him of a fundamentally fair trial. *See e.g., Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). At trial, the prosecution raised two issues with regard to Young's proposed testimony about his post-arrest statements: (i) whether the court would permit Young to specify that at least one of his statements was videotaped; and (ii) the permissible scope of petitioner's testimony with respect to the contents of those statements. (Tr. 209.) The trial court took the application under advisement but withheld ruling on the issue in advance of Young's testimony, and the parties did not again raise the issue of his statements. In the absence of a "ruling," Young in fact testified as to the existence of the statements—both written and videotaped—and told the jury that those

11

statements represented "his version of the events." (Tr. 339-40.) In light of this testimony, Young cannot articulate any conceivable harm—let alone harm rising to the level of a due process violation—that he incurred as a result of the lack of a trial court ruling on the scope of his testimony concerning his post-arrest statements.

Accordingly, there is no basis for the court to conclude that the state court's rejection of Young's claims concerning his post-arrest statements was contrary to or an unreasonable application of clearly established federal law.

### C. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

With respect to trial counsel, Young argued in his supplementary brief on direct appeal that trial counsel was ineffective because counsel failed to reargue the admissibility of Young's post-arrest statements after the court withheld ruling on the scope of his proposed testimony. Young also alleges in his petition that appellate counsel was ineffective because counsel failed to raise, on direct appeal, Young's claims of trial counsel error.

#### (1) Legal Standard

Under the standard set forth in *Strickland v. Washington,* to succeed on a claim of ineffective assistance of counsel, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." 466 U.S. 668, 694 (1984). Counsel's performance is constitutionally deficient where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Upon judicial review of counsel's performance, it is strongly presumed that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Further, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal

12

proceeding if the error had no effect on the judgment." *Id.* at 691. Therefore, to make the required showing of prejudice, Young must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004). Accordingly, "there is no reason for a court deciding an ineffective assistance claim... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697. "If it is easier to dispose of an infectiveness claim" on one of the components, without addressing the other, "that course should be followed." *Id.*

### (2) <u>Young's Claims of Ineffective Assistance of Counsel Are Meritless</u>

#### (a) *Trial Counsel*

Young's claim that trial counsel committed unprofessional errors by failing to re-raise the use of his post-arrest statements at trial is entirely without merit. As discussed *supra*, neither party sought admission of those statements as evidence at trial. Rather, what was raised at trial was the permissible scope of Young's proposed testimony as to his post-arrest statements where the prosecution did not intend to admit them into evidence. Although the trial court withheld ruling on the proposed scope of Young's testimony at the time the issue was raised, upon his direct examination, Young testified that his post-arrest statements represented his "version of the events," to which he testified at length. (Tr. 339-40.) Neither defense counsel nor the prosecution sought further ruling from the trial court on the issue of Young's testimony concerning his post-arrest statements. Upon a review of the record, it is clear that no further ruling on the scope of Young's testimony was necessary. Accordingly, Young's counsel did not act unreasonably in failing to re-raise the issue.

(b) *Appellate Counsel*

Young further claims that his appellate counsel was ineffective because that counsel refused to include Young's claims of trial counsel error in his direct appeal. Appellate counsel made the strategic decision not to include a claim of ineffectiveness of trial counsel because counsel saw no basis for raising such a claim. In fact, the record is replete with letters exchanged between Young and appellate counsel that repeat counsel's view that such a claim was baseless in his professional opinion. Moreover, in response to Young's petition for a writ of error coram nobis, appellate counsel submitted an affidavit stating his belief that the "only viable issue in the case" was the issue of the missing witness charge, as opposed to a claim for ineffective assistance of trial counsel. In light of the court's determination that Young's claim of ineffective assistance of trial counsel is without merit, the court agrees with appellate counsel's determination that there was no basis to raise such a claim on direct appeal.

In sum, the determinations of the Appellate Division that neither trial nor appellate counsel were ineffective were not contrary to, nor an unreasonable application of, clearly established federal law. *See People v. Young*, 4 A.D.3d 441 (2d Dep't, 2004); *People v Young*, 58 A.D.3d 886 (2d Dep't, 2009).

## IV. CONCLUSION

For the foregoing reasons, and based on the entirety of the record, Young's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. As Young has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment for respondent.

The court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* relief is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**So Ordered:**

s/Nina Gershon
_____
Hon. Nina Gershon
United State District Court Judge

Dated: Brooklyn, New York
      July 31, 2015